YPSILANTI DRESS-STAY MANUF'G CO. v. VAN VALKENBURG et al.

(Circuit Court, N. D. New York. February 29, 1896.)

No. 6,198.

1. PATENTS—NOVELTY AND INVENTION—GARMENT STAYS.
    The Bowling patent (original No. 362,568, reissue No. 11,009), for improvements in stays for garments, consisting in securing the stiffening blade between sheets of rubber projecting beyond the blade both at its ends and edges, the rubber being covered with fabrics of similar dimensions, which are made to adhere thereto by pressure between warm plates, *held* void as to claim 1, for want of patentable invention, in view of the prior state of the art.

2. SAME—INVENTION.
    Invention cannot be predicated of the popularity of the article alone, as the success thereof may be accounted for by superior workmanship, attractive manner of display, and the energy and ability with which it is introduced to the market.

3. SAME.

The Bowling patent No. 378,080, for an improvement upon the garment stay covered by patent No. 362,568, to the same inventor (reissue No. 11,009), *held* void for want of invention.

This was a bill in equity by the Ypsilanti Dress-Stay Manufacturing Company against Wells Van Valkenburg and others for alleged infringement of two patents relating to garment stays. On final hearing.

This action is based upon two patents granted to Enoch C. Bowling and now owned by the complainant. Both are for improvements in stays for garments. The patent principally relied on is reissue No. 11,009, dated July 2, 1889. The original, No. 362,568, is dated May 10, 1887. The specification states that it was common to form in a garment a series of pockets by stitching, into which steel or whalebone stiffeners were inserted. This method was not only expensive, but the stiffeners, being loose, soon wore through the garments and dropped out. The object of the patentee was to obviate these and other difficulties by securing the stiffening-blade between sheets of rubber projecting beyond the blade both at its ends and edges, the rubber being covered with a suitable fabric, so that when subjected to pressure between warm plates the parts adhere and a stitching edge around the stiffener is provided. The stiffening-blade may be of steel, whalebone, wood or any other suitable material. The outer covering may be of any suitable cloth. The strips of rubber between the stiffener and the outer fabric must be unvulcanized and very thin. The specification says: "The parts constituting the stay, when placed in position, are subjected to pressure between heated clamps or plates, whereby the rubber strips become softened or melted, thereby passing into the meshes of the covering fabrics around and over the stiffener, the rubber sheets joining each other, so that when congealed they form a solid mass, firmly cementing the parts together, inclosing the stiffener D within a rubber covering, thus holding said parts firmly in position between the fabrics, and when using steel for the stiffeners D the rubber prevents moisture or perspiration from the body of the wearer from reaching the stiffener, thereby preventing the rusting of the steel, as is now common with steel stays." The first claim only is involved. It is as follows: "(1) The stay herein described, comprising the stiffening-blade D, having sheets of rubber t t lying upon each side thereof and projecting over the edges and ends of said blade, with the covering fabrics B B''' having a like projection and adhering thereto, whereby a stitching-edge is provided surrounding the stiffening-blade, as and for the purposes specified." The specification and the first claim of the original and the reissue are the same. No attack is made upon the reissue, as such, so long as the controversy is confined, as it is here, to the first claim. The defenses are that the claim is anticipated, does not involve invention, and that it is not infringed by the stay manufactured by the defendants at the present time.

The second patent is No. 378,080, dated February 21, 1888. "This patent," says the complainant's brief, "differs from reissue No. 11,009 only in capping the ends of the steels before making up the stay." The patentee says in the specification: "I am aware that metallic end caps secured to the ends of stiffening-blades for corsets and stays have long been in use, and therefore do not claim, broadly, such matter; but I am not aware that stiffening-blades having such metallic end caps have heretofore been secured within a covering of fabric having interposed layers of gutta-percha tissue, with a marginal or fabric stitching-edge surrounding said protected blade and metallic end caps, whereby said blades and metallic end caps are provided with an impervious coating having an outer textile covering, the gutta-percha tissue cementing the end caps firmly to the ends of the blade and within the textile fabric coverings, whereby said metallic parts are prevented from rusting or corroding, the metallic end caps being cemented within the fabrics, thereby preventing said caps from pulling off the blade, as is common when attached in the ordinary way to the exterior of the stay, by simply pressing said caps onto the ends of the stay." The claim is for "the herein-described stay, com-

prising the stiffening-blade having metallic end caps, and fabric coverings projecting beyond the edges and capped ends of the stiffening-blade, with interposed sheets of gutta-percha tissue, said parts adhering together and forming the textile fabric stitching-edges f f, as and for the purposes specified." The defense is that the claim is void for want of invention.

Edmund Wetmore and George H. Lothrop, for complainant.
Charles H. Duell, for defendants.

COXE, District Judge (after stating the facts). The first claim of the reissue is not for a process or method, but for a product, a new article of manufacture—a garment stay. This stay has the following features: First. A stiffening blade. Second. Two sheets of rubber, one lying on each side of the blade and projecting over its edges and ends. Third. Covering fabrics similar in dimensions to the rubber sheets and adhering thereto. Fourth. Projections sufficient to provide a stitching edge entirely around the blade. Such a stay, no matter how produced, would infringe, and such a stay, made prior to March, 1886, would anticipate.

The prior art shows a very large variety of stays. In January, 1883, Austin Kelley made a dress stay by covering a capped blade, precisely like the blade of the patent, with "gutta-percha tissue" which is concededly the equivalent for the "very thin" rubber strips of the patent. Kelley's stay was also covered with a textile fabric which was wrapped round the gutta-percha, the parts being made to adhere by heat and pressure. Kelley's object, like Bowling's, was to cover the stay so "as to exclude moisture," and provide means for fastening it securely to the garment to be stayed. Although the Kelley patent says that "a line of stitching is run near the edge of the busk, so as to pass through the four-fold outer covering, as well as the inner layer of muslin and gutta-percha," it is not contended that this is the means of attachment shown in the patent at bar. On the other hand, it can hardly be disputed that the Kelley patent shows all of the features of the Bowling stay, except the stitching edge. The complainant's brief admits this, by implication, when it says: "The Kelley stay has been brought into use only by adding the stitching edges of Bowling." In other words, if the former had shown the edges of the latter it would have been an anticipation. Other patents might be cited showing, substantially, the same combination. For instance, Brown, in 1863, described a thin strip of steel covered with a woven fabric "the inner face of which is coated with India-rubber," and the Smith specification describes the corset stay of that patent (1879) as follows:

"A is the stay; a, the interior steel portion; b, the rubber coating between the steel and the outer cloth covering, c."

References might be multiplied, but it is unnecessary. There can be no doubt that at the date of Bowling's application it was old to cover a steel busk with India-rubber, or equivalent materials, and an outer covering of cloth completely enveloping the busk, adhesion of the parts being produced by heat and pressure. It cannot, then, be disputed that the prior art shows all the features of

the claim as enumerated above except the fourth, viz.: "A stitching edge entirely around the blade."

Starting with the Kelley patent, which, for present purposes, is as pertinent a reference as any, the question of patentability may be reduced to the simple proposition, did it involve invention to provide a stitching edge for Kelley's stay? It is obvious that with no assistance from the prior art the problem which Bowling had to solve was not particularly difficult. Before him was a waterproof dress stay designed to be attached to garments. The garment was there, the stay was there. How shall the stay be attached? Did it require any severe strain upon the "intuitive faculty of the mind" to suggest sewing? But it is said that not only was it necessary to think of sewing, but also to provide projections to hold the stitches. This is true, but in view of the ordinary expedients resorted to when it is desired to sew one article, through which a needle will not penetrate, to another, did it involve invention? It would seem that the weight of authority would require a negative answer. Thus far we have proceeded on the hypothesis that the prior art furnished no hint as to the manner in which rubber and cloth covered stays might be attached to the garment by sewing, but it will be found, on examination, that the way adopted by Bowling was well known as applicable to this particular art. The Brown patent, before alluded to, describes "a selvedge of woven fabric on each side of the crinoline" by means of which it "may be sewed onto any fabric by merely stitching down the sides instead of sewing over the metallic strands." The fact that the Brown patent relates to stays for ladies' skirts instead of dress or corset stays is immaterial as they both belong to the same art. The record abundantly proves that in the eye of the patent law they are one and the same thing.

The patent to Van Orden, 1877, contains the following statement:

"The impervious covering is, preferably, made of the substance known as 'celluloid,' which is very strong and tough as well as elastic, and is sufficiently soft, or may be made so, as to permit of its being stitched through or sewed onto the cloth portion of the corset."

The patent also says, that vulcanized rubber or other plastic compound may be used, and that the stay is attached to the corset "by sewing through one or both edges of the impervious covering."

Nettleton, in 1885, described a stay having the covering material projecting at the ends. He says:'

"The stitches in seams H, which pass through the portions E of the stays, are thus made to perform the additional function of securing the stays in place."

The "German stay," which was on the market long prior to 1886, shows a steel stay with a cloth covering projecting on both sides so that it may be sewn to the garment by a line of stitches through these projecting edges. It is true that this is not a waterproof stay and that the stitching edges do not extend around the ends, but it certainly shows that there was nothing new in sewing a dress stay to a garment by stitching through edges projecting at

the sides, and Nettleton shows the same through end projections. The question may, therefore, be still further narrowed to the inquiry, did it require invention to provide the Kelley stay with the German and Nettleton projections? The court is constrained to answer this question in the negative. Bowling did not invent a new stay or a new means of attaching an old stay. His stay is, very likely, more convenient than any which preceded it, but the features of which it is composed were ready at his hand in the prior art. To put them together did not require the genius of the inventor, but the skill of the mechanic. The ideas were all old, their application obvious, and the result the same.

In Cluett v. Claflin, 140 U. S. 180, 11 Sup. Ct. 725, the court had before it a patent for an improvement in shirts. One of the claims was as follows:

"In combination with a shirt body, a shirt bosom bound on the outer edge with a folded and stitched binding, and attached to the shirt body by a separate line of stitching through such binding."

The court says, after stating the facts:

"What then was left for Cluett to invent? Nothing, apparently, but a separate line of stitches through the binding attaching the bosom to the shirt. But whether a separate line of stitches shall be used for this purpose, or whether such stitches shall pass through the binding or inside of it, is obviously a question of mere convenience, involving nothing which, under a most liberal construction, could be held to be an exercise of the inventive faculty. * * * We think this case must be added to the already long list of those reported in the decisions of this court wherein the patentee has sought to obtain the monopoly of a large manufacture by a trifling deviation from ordinary and accepted methods."

The applicability of this language seems obvious. If it be not invention to bind a bosom and sew it to a shirt, it is not invention to bind a dress stay so that it may be sewn to a dress.

The popularity of the complainant's stay has been abundantly demonstrated by the proof, but, of course, invention cannot be predicated of this alone. McClain v. Ortmayer, 141 U. S. 419, 428, 12 Sup. Ct. 76; Walk. Pat. (3d Ed.) § 40. Sufficient reason for the success of the complainant's stays is found in the attractive manner in which they are displayed, their superior workmanship and the ability with which they have been introduced to the market.

Patent No. 378,080 requires but a passing comment. It seems too plain for discussion that there is no patentable novelty in adding end caps to the steel of the former patent, especially when it is conceded that end caps identical in structure had been attached to similar steels as shown in at least seven different prior patents.

The bill is dismissed